UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

TIFFANY R. S.,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

CASE NO. 3:18-CV-05304-DWC

ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS

Plaintiff filed this action, pursuant to 42 U.S.C. § 405(g), for judicial review of Defendant's denial of Plaintiff's applications for supplemental security income ("SSI"). Dkt. 3. Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. *See* Dkt. 5.

The Court concludes the ALJ did not err when he did not (1) reopen Plaintiff's prior application for disability benefits; (2) include records from her prior application to the pending application; and (3) include fibromyalgia or rheumatoid arthritis as one of Plaintiff's medically determinable impairments; (4) nor did the ALJ fail in his consideration of the medical evidence.

However, the ALJ failed to give legally sufficient reasons to discount Plaintiff's testimony and evidence from her family members. Had the ALJ properly considered this evidence, the residual functional capacity ("RFC") may have included additional limitations. The ALJ's error is therefore not harmless, and this matter is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner of Social Security for Operations ("Commissioner") for further proceedings consistent with this Order.

## FACTUAL AND PROCEDURAL HISTORY

On March 25, 2015, Plaintiff filed an application for SSI, alleging disability as of June 1, 2011. *See* Dkt. 8, Administrative Record ("AR") 15. The application was denied upon initial administrative review and on reconsideration. *See* id. A hearing was held before Administrative Law Judge ("ALJ") Allen G. Erickson on November 17, 2016. *See* id. In a decision dated January 12, 2017, the ALJ determined Plaintiff to be not disabled. *See* AR 25. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council, making the ALJ's decision the final decision of the Commissioner. *See* AR 1; 20 C.F.R. § 404.981, § 416.1481.

In Plaintiff's Opening Brief, Plaintiff maintains the ALJ erred by: (1) refusing to reopen Plaintiff's prior application for disability benefits; (2) failing to fully and fairly develop the record by not incorporating evidence from Plaintiff's prior disability application to the current file; (3) failing to properly evaluate the medical record, including diagnoses of fibromyalgia and rheumatoid arthritis; (4) improperly discounting Plaintiff's symptom testimony; (5) improperly discounting lay evidence; and (6) therefore failing to properly assess Plaintiff's residual functional capacity ("RFC"). *See* Dkt. 12.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

## DISCUSSION

### I. Whether the ALJ appropriately refused to reopen Plaintiff's prior application for disability benefits.

Plaintiff contends the ALJ erred by refusing to reopen her prior application for disability benefits. Dkt. 12, pp. 3-4. However, absent a constitutional challenge, neither the Administrative Procedure Act nor section 205(g) of the Social Security Act authorizes judicial review of the Commissioner's decision to not reopen a previously adjudicated claim for social security benefits. *Califano v. Sanders*, 430 U.S. 99, 109 (1977).

Here, Plaintiff requested to reopen her prior application for disability benefits at the hearing on November 17, 2016. AR 83. In his written opinion, the ALJ denied Plaintiff's request because Plaintiff had not presented "new and material evidence . . . for the period in question." AR 15. Plaintiff argues that because her March 25, 2015 application for disability benefits was less than one year after the initial determination on the previous application, "the March 20, 2014 determination could have been opened for any reason." Dkt. 12, p. 3. However, Plaintiff has not alleged a violation of her constitutional rights; therefore, the Court concludes the ALJ did not err in refusing to reopen Plaintiff's prior application for disability.

### II. Whether the ALJ appropriately developed the record.

Plaintiff contends the ALJ violated his duty to fully and fairly develop the record by not adding Plaintiff's disability files from her prior application to the current application. Dkt. 12,

pp. 3-4. Although an ALJ has a duty to develop the record when "there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence," *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001) (internal citations omitted), Plaintiff provides only the conclusory assertion, "The ALJ's failure to add this missing evidence to the file violated the ALJ's duty to fully and fairly develop the record." Dkt. 12 pp. 3-4. However, "a bare assertion of an issue does not preserve a claim." *D.A.R.E. America v. Rolling Stone Magazine,* 270 F.3d 793, 793 (9th Cir.2001) (internal citations omitted). Plaintiff has not identified what specific materials from her prior application the ALJ failed to consider, what evidence in the record is ambiguous, nor how the record is inadequate to allow for proper evaluation of the evidence. *See* Dkt. 12 pp. 3-4. Therefore, the Court concludes the ALJ did not err in failing to add Plaintiff's prior disability files to the current application. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (the court will not consider an issue that a Plaintiff fails to argue "with any specificity in his briefing").

    **III.    Whether the ALJ properly considered all of Plaintiff's impairments at Step Two of the sequential evaluation process.**

Plaintiff contends the ALJ erred at step two of the sequential evaluation process in failing to find medically determinable impairments of fibromyalgia and rheumatoid arthritis. Dkt. 12 p. 11.

Step Two of the Social Security Administration's ("SSA's") evaluation process requires the ALJ to determine whether the claimant "has a medically severe impairment or combination of impairments." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citation omitted); *see also* 20 C.F.R. § 404.1520(a)(4)(ii) (2012). An impairment is "not severe" if it does not "significantly limit" the ability to conduct basic work activities. 20 C.F.R. § 404.1521(a)

(effective through March 26, 2017).[1] "Basic work activities are 'abilities and aptitudes necessary to do most jobs, including, for example, walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling.'" *Smolen*, 80 F.3d at 1290 (quoting 20 C.F.R. § 140.1521(b)). An impairment or combination of impairments "can be found 'not severe' only if the evidence establishes a slight abnormality having 'no more than a minimal effect on an individual[']s ability to work.'" *Id.* (quoting *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988) (adopting Social Security Ruling ("SSR") 85-28)).

A. <u>Fibromyalgia</u>

The Administration follows Social Security Ruling ("SSR") 12-2p when determining whether fibromyalgia is a medically determinable impairment. *See* SSR 12-2p, 2012 WL 3104869 (July 25, 2012). In finding fibromyalgia a medically determinable impairment, the Commissioner cannot rely on a physician's diagnosis alone; rather, "the evidence must document that the physician reviewed the person's medical history and conducted a physical exam." *Id.* at *2. Furthermore, SSR 12-2p "designates two separate sets of diagnostic criteria that can establish fibromyalgia as a medically determinable impairment." *Rounds v. Comm'r of Soc. Sec. Admin.*, 807 F.3d 996, 1005 (9th Cir. 2015) (citing SSR 12-2p). Under the first set of criteria, fibromyalgia may be a medically determinable impairment if the claimant has (1) a history of widespread pain; (2) at least 11 tender points; and (3) "[e]vidence "that other disorders that could cause the symptoms or signs were excluded." SSR 12-2p, 2012 WL 3104869, at *2-3. According to the second set of criteria, fibromyalgia may be a medically determinable impairment if the claimant has (1) a history of widespread pain; (2) "[r]epeated manifestations" of six or more

---

[1] The Court "applies the law in effect at the time of the ALJ's decision." *Rose v. Berryhill*, 256 F.Supp.3d 1079, 1083 n.3 (C.D. Cal. 2017) (citations omitted).

fibromyalgia symptoms, signs, or co-occurring conditions; and (3) "[e]vidence that other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring conditions were excluded." *Id.* at 3.

Here, the ALJ found other disorders that could cause the symptoms or signs of fibromyalgia were not excluded in light of record evidence showing Plaintiff's complaints of diffuse pain were "likely secondary to a conversion disorder." AR 18 (citing AR 426-429, 568, 586). This affected Plaintiff under both sets of criteria for establishing fibromyalgia. The ALJ also noted, relevant to the first set of criteria, there is no evidence that 11 tender points were palpated. AR 18.

Although Defendant concedes that Plaintiff's treatment notes show Plaintiff's positive tender points for fibromyalgia exceeded the required number of 11 on several occasions, Dkt. 16 p. 7, substantial evidence supports the ALJ's findings with respect to fibromyalgia because Plaintiff has not met the burden to show that other disorders that could cause her symptoms, signs, or co-occurring conditions of fibromyalgia were excluded. *See* SSR 12-2p, 2012 WL 3104869, at *2-3.

Plaintiff argues "Dr. [James] Nakashima's findings establish the diagnosis of fibromyalgia consistent with the requirements in SSR 12-2p[.]" Dkt. 12 p. 11. Plaintiff, however, does not explain how Dr. Nakashima's findings are consistent with the requirements of SSR 12-2p. *See id.* Furthermore, while Dr. Nakashima's treatment notes assess fibromyalgia on some occasions and note positive tender points, they do not indicate other disorders that could cause the symptoms or signs were excluded. *See* AR 448-451, 455. On the contrary, Dr. Nakashima consistently diagnosed other disorders that may have the same or similar symptoms or signs as fibromyalgia including lupus and undifferentiated connective tissue disease. *See e.g.*, AR 448,

449, 450, 452, 455, and 654. Rheumatologic disorders, which include systemic lupus erythematosus and undifferentiated and mixed connective tissue disease, are among the "other disorders that may have symptoms or signs that are the same or similar to those resulting from [fibromyalgia][.]" *See* SSR 12-2p *3 n 7; 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 14.00. (effective September 29, 2016 to January 16, 2017). As Dr. Nakashima's treatment notes do not indicate lupus and undifferentiated connective tissue disease were excluded as the cause of Plaintiff's symptoms, substantial evidence supports the ALJ's determination that fibromyalgia is not a medically determinable impairment under SSR 12-2p.

B. <u>Rheumatoid Arthritis</u>

Plaintiff contends the ALJ's finding "that the evidence is 'insufficient' to support a diagnosis of rheumatoid arthritis" is not supported by substantial evidence. Dkt 12 p. 11 (citing AR 18).

To the extent Plaintiff argues the ALJ's finding that rheumatoid arthritis is not one of Plaintiff's medically determinable impairments, her argument is conclusory, as her only support is a short statement, without citation to the record, that "there are many findings from many physicians supporting a diagnosis of rheumatoid arthritis." Dkt. 12 p. 11. While there are two references to rheumatoid arthritis diagnoses buried in Plaintiff's 8-page summary of medical evidence, the diagnoses themselves do not contradict the ALJ, who acknowledged diagnoses of rheumatoid arthritis. *See* AR 18. Plaintiff has not identified a legal standard, nor elaborated how the evidence of her rheumatoid arthritis meets this legal standard. *See* Dkt. 12, p. 11. As noted, "a bare assertion of an issue does not preserve a claim." *D.A.R.E. America v. Rolling Stone Magazine,* 270 F.3d 793, 793 (9th Cir.2001) (internal citations omitted). Therefore, the ALJ did

not err in finding rheumatoid arthritis is not one of Plaintiff's medically determinable impairments. *See Carmickle*, 533 F.3d at 1161 n.2.

### IV. Whether the ALJ properly evaluated the medical evidence.

Plaintiff broadly contends the ALJ failed to properly evaluate the "[m]edical [e]vidence." Dkt. 12 p. 4. She dedicates nearly eight pages of her Opening Brief reciting medical records. *See id.* at pp. 4-11. However, she offers no cogent reasons, apart from the challenges regarding fibromyalgia and rheumatoid arthritis, how the medical evidence warrants overturning the ALJ's decision. *See id*. The Court therefore finds the ALJ did not err in evaluating the medical evidence. The Ninth Circuit has repeatedly admonished the Court cannot manufacture arguments for a party. Rather, we "review only issues which are argued specifically and distinctly in a party's opening brief." *Indep. Towers of Washington v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) (citing *D.A.R.E. America v. Rolling Stone Magazine*, 270 F.3d 793, 793 (9th Cir.2001)). It is Plaintiff's burden to present the Court with legal arguments to support her claims. *See id.* at 930. Absent argument, the Court declines to pick through her extensive recitation of the medical record to match evidence to unarticulated legal theories. *See id*.

### V. Whether the ALJ properly assessed Plaintiff's testimony

Plaintiff contends the ALJ erred by failing to provide clear and convincing reasons to reject her testimony. Dkt. 12, pp. 11-15. The Court agrees.

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995) (citation omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.*; *see also Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the

claimant's testimony must be "clear and convincing." *Lester*, 81 F.3d at 834 (citation omitted). While the SSA's regulations have eliminated references to the term "credibility," the Ninth Circuit has held its previous rulings on claimant's subjective complaints – which use the term "credibility" – are still applicable.[2] *See* SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016); 2016 WL 1237954 (Mar. 24, 2016); *see also Trevizo v. Berryhill*, 871 F.3d 664, 678 n.5 (9th Cir. 2017) (noting SSR 16-3p is consistent with existing Ninth Circuit precedent). Questions of credibility are solely within the ALJ's control. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). The Court should not "second-guess" this credibility determination. *Allen*, 749 F.2d at 580.

Here, Plaintiff testified that lupus is the primary condition that prevents her from working. AR 47. Her lupus symptoms allegedly include pain and swelling in the joints, fatigue, blisters on mucus membranes and skin, and seizures. *Id*. Plaintiff claimed she has joint swelling in her hands at least once a week, and also experiences joint pain in the hips, shoulders, and knees. AR 81. On typical day, her pain is allegedly in the range of 5-6 on a scale of 1-10. AR 62. She claimed when her hands are swollen, she cannot carry her 3-4 pound purse. AR 82.

Plaintiff testified she experiences seizures five to six times a week. AR 49. During seizures, she allegedly experiences muscle cramping and sometimes loss of bladder control. AR 53. Plaintiff claimed to have no recollection of what happens during a seizure, as she typically "lose[s] spaces of time" from 20 minutes to a couple of hours. AR 52.

Plaintiff claimed her medications to treat lupus have had only a "minimal effect": at one time she was on methotrexate, a chemotherapy derivative, but her doctor removed her from the

---

[2] Because the applicable Ninth Circuit case law refers to the term "credibility," the Court uses the terms "credibility" and "subjective symptom testimony" interchangeably.

1 drug because it caused her to lose all of her hair; another time she obtained some benefit from the
2 drug Benlysta, but was forced to stop using the drug because her insurance refused to cover it.
3 AR 48-49. She testified she is on Keppra, and from what she understands, her seizures since
4 "upp[ing] the dosage" have not been as severe or are lasting as long, although there has been no
5 reduction in frequency. AR 51; 57.

6 The ALJ determined Plaintiff's severe medically determinable impairments could
7 reasonably be expected to cause the alleged symptoms, but discounted Plaintiff's testimony
8 regarding the intensity, persistence, and limiting effects of her symptoms because (1) "the
9 objective diagnostic and clinical findings do not support the claimant having a seizure disorder,
10 or swelling of the brain[;]" (2) Plaintiff's complaints in May 2015 and July 2015 of stroke-like
11 conditions were found to be without anatomic basis, and she was subsequently diagnosed with
12 conversion disorder; (3) "the evidence . . . has not supported the [Plaintiff's] complaints of
13 rheumatoid arthritis[,]" and doctors frequently described Plaintiff with no constitutional
14 symptoms, normal physical exams, normal gait, no apparent distress, normal range of motion,
15 and no tenderness or swelling in the joints; and (4) Plaintiff's lupus symptoms have waxed and
16 waned. AR 21-22.

17 First, the ALJ noted "the objective diagnostic and clinical findings do not support the
18 claimant having a seizure disorder, or swelling of the brain." AR 21. However, on August 28,
19 2015, neurologist Zhongzeng Li, M.D., noted Plaintiff "has SLE [systemic lupus erythematosus]
20 which is [a] risk factor for seizure disorder. The description of her episodes suggest [sic] partial
21 seizures." AR 616. On October 16, 2015, Dr. Nakashima reviewed Plaintiff's medical history,
22 diagnosed systemic lupus, and noted: "Seizures most likely related to lupus. Seizure[s] are
23 steroid responsive." AR 649. In light of this evidence, the record contradicts the ALJ's

24

determination that Plaintiff's seizure disorder is not supported by "the objective diagnostic and clinical findings." Furthermore, to the extent the ALJ implies Plaintiff's normal results on CTs and MRIs of the brain, head and neck are inconsistent with a seizure disorder, the Court is cautioned to resist the temptation to interpret raw medical evidence, because lay intuitions about medical phenomena are often wrong. *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990). Plaintiff's physicians, not the ALJ, were in the position to determine whether Plaintiff's CT and MRI results are relevant to the validity of a seizure disorder.

Second, the ALJ noted the lack of objective findings for the left side numbness and weakness (or "stroke-like symptoms") Plaintiff displayed in May and July of 2015. AR 21. The ALJ also noted that consistent with the lack of objective findings, Plaintiff was diagnosed with conversion disorder. *Id*. However, a conversion disorder diagnosis is not on its own a good basis for concluding she is exaggerating her symptoms, only that some of the symptoms she experienced may be at least partly psychological in origin. *See Hanes v. Colvin*, 651 F. App'x 703, 707 (9th Cir. 2016). Furthermore, the fact physicians were initially unable to pinpoint a cause for the stroke-like symptoms Plaintiff displayed in May and July of 2015 does not necessarily mean she was faking her symptoms. By August of 2015, similar episodes of paralysis and tingling in the limbs were interpreted by Dr. Li as complex partial seizures. *See* AR 615-616. Given Plaintiff's constellation of impairments, the lack of initial objective medical findings from Plaintiff's physicians regarding the source of her stroke-like symptoms is not a clear and convincing reason to discount her symptom testimony.

Third, the ALJ noted evidence does not support Plaintiff's "complaints of rheumatoid arthritis." But the ALJ failed to explain how the lack of support for rheumatoid arthritis means Plaintiff could not have experienced joint pain. At the hearing, Plaintiff testified that her joint

pain is a symptom of her lupus. AR 47. Hence, a lack of support for rheumatoid arthritis does not necessarily warrant discounting Plaintiff's testimony about joint pain. *See Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003) (citations omitted) ("We require the ALJ to build an accurate and logical bridge from the evidence to [his] conclusions so that we may afford the claimant meaningful review of the SSA's ultimate findings.").

The ALJ also noted doctors frequently described Plaintiff with no constitutional symptoms, normal physical exams, normal gait, no apparent distress, normal range of motion, and no tenderness or swelling in the joints. AR 21-22. This, however, is consistent with Plaintiff's testimony that she experiences variable pain, with greater pain coinciding with lupus flares aggravated by stress. *See* AR 262. While some treatment notes do not contain reports of joint pain and swelling, many do. Various treatment reports from autumn of 2014 through autumn of 2015 note positive findings for joint pain, joint swelling, joint stiffness, and arthralgias. *See* AR 371, 380, 359, 361, 354, 478, 648. Plaintiff was also described during this time as moving slowly and in obvious pain during a mental evaluation with Marsha Hedrick, Ph.D. AR 444. In light of the record as a whole, sporadic treatment reports with no findings related to joint pain are not a clear and convincing reason to discount Plaintiff's symptom testimony. *See Reddick v. Chater*, 157 F.3d 715, 722-23 (9th Cir. 1998) (an ALJ must not "cherry-pick" certain observations without considering their context).

Lastly, the ALJ noted Plaintiff's lupus has waxed and waned, and that with sufficient treatment, her lupus was described as stable by her treating physician in December 2014. AR 22 (citing AR 451). However, a fuller view of the record suggests Plaintiff continued to experience worsening lupus symptoms after December of 2014. Treatment notes of March 2015 express worsening joint pain and a photosensitive rash on the face, with the doctor recommending more

aggressive lupus treatment. AR 452. By May 2015 Plaintiff was admitted to the hospital for left side numbing, tingling, and weakness "possibl[y] secondary to lupus." *See* AR 454. Treatment reports into October 2015 describe worsening symptoms, with seizures "most likely related to lupus." AR 649. In view of the complete record, Plaintiff's sporadic asymptomatic moments are not a clear and convincing reason to discount her testimony regarding the intensity of her symptoms.

For the above stated reasons, the Court finds the ALJ failed to provide clear and convincing reasons, supported by substantial evidence in the record, to discount Plaintiff's symptom testimony. Accordingly, the ALJ erred.

Harmless error principles apply in the Social Security context. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless only if it is not prejudicial to the claimant or "inconsequential" to the ALJ's "ultimate nondisability determination." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *see Molina*, 674 F.3d at 1115. The determination as to whether an error is harmless requires a "case-specific application of judgment" by the reviewing court, based on an examination of the record made "'without regard to errors' that do not affect the parties' 'substantial rights.'" *Molina*, 674 F.3d at 1118-19 (quoting *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009)).

Here, Plaintiff testified regarding limitations that are greater than the limitations set forth in the ALJ's RFC determination. The ALJ determined Plaintiff "should avoid exposure to hazards secondary to psuedoseizure episodes[;]" however, no limitations regarding interruptions to work were included in the RFC. AR 20. Yet Plaintiff testified she experiences seizures five to six times a week, AR 49, during which "she loses space[s] of time" from 20 minutes to a couple of hours, and occasionally loses control of her bladder. AR 52. The ALJ may have included

additional limitations regarding interruptions to work had the ALJ fully credited Plaintiff's testimony regarding her seizures. In turn, these limitations may have been conveyed to the vocational expert ("VE"), affecting the ultimate disability determination. Because the ultimate disability determination may have changed with proper consideration of Plaintiff's testimony, the ALJ's error is not harmless and requires reversal.

**VI. Whether the ALJ properly assessed lay witness evidence.**

Plaintiff contends the ALJ erred by failing to address lay evidence from her husband, mother, and mother-in-law. Dkt. 12, pp. 15-18. The Court agrees.

Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into account." *Lewis v.Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). As such, lay witness testimony "cannot be disregarded without comment." *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (citations omitted). To reject lay witness testimony, the ALJ must "expressly" disregard such testimony and provide "reasons germane to each witness for doing so." *Lewis*, 236 F.3d at 511. In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for dismissing the testimony are noted, even if the ALJ does "not clearly link his determination to those reasons," and substantial evidence supports the ALJ's decision. *Id.* at 512.

Here, Plaintiff's mother and mother in law each submitted written statements regarding Plaintiff's seizures. AR 347, 348. Furthermore, Plaintiff's husband provided a written statement and oral testimony regarding Plaintiff's impairments at the November 2016 hearing. AR 55-58, 268-275. However, the ALJ's written opinion does not mention any lay evidence. *See* AR 15-25. Under these circumstances, the ALJ has failed to give "reasons germane to each witness" to

disregard the lay testimony in this case. *See Nguyen*, 100 F.3d at 1467 (lay witness testimony "cannot be disregarded without comment").

As noted, an error is harmless only if it is not prejudicial to the claimant or "inconsequential" to the ALJ's "ultimate nondisability determination." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *see Molina*, 674 F.3d at 1115. Defendant contends any error in the ALJ's failure to comment on the lay testimony is harmless because the lay testimony merely repeated much of Plaintiff's testimony, which the ALJ rejected for clear and convincing reasons. Dkt. 16, pp. 14-15. This argument is not persuasive because the ALJ's reasons for rejecting Plaintiff's testimony, as determined above, were not clear and convincing.

The lay witnesses in this case described limitations that are greater than the limitations set forth in the ALJ's RFC determination. Plaintiff's mother and mother-in-law submitted letters stating they each watch over Plaintiff 2-3 times a week in case a seizure occurs when others are unavailable to provide support. *See* AR 347, 348. Plaintiff's husband corroborated Plaintiff's testimony regarding the number of seizures she experiences, AR 77, and noted she comes out of her seizures very disoriented, and that she sometimes takes several hours to regain the faculties for a full conversation. AR 79. He also described her symptoms during a seizure, noting that during her "tonic clonic" seizures, she appears non responsive and clenches her hands, while her "grand mal" seizures are scary and violent, and she flails her arms and bounces her head off the floor. AR 76-77. This evidence could result in Plaintiff experiencing significant interruptions to a workday/week due to seizures. As noted, however, the ALJ's RFC determination does not include limitations for interruptions to work. Because the ultimate disability determination may have changed with proper consideration of the evidence from Plaintiff's husband, mother, and mother-in-law, the ALJ's error is not harmless and requires reversal.

**VII. Whether the ALJ properly assessed Plaintiff's RFC**

Lastly, Plaintiff asserts the ALJ's RFC assessment and Step Five findings were erroneous. Dkt. 12, pp. 18-19.

The Court has found the ALJ committed harmful error and has directed the ALJ to reassess Plaintiff's testimony and the lay evidence on remand. *See* Sections V-VI., *supra*. Hence, the ALJ is directed to reassess the RFC on remand. *See Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) ("an RFC that fails to take into account a claimant's limitations is defective"). As the ALJ must reassess Plaintiff's RFC on remand, the ALJ is directed to re-evaluate Step Five to determine whether there are jobs existing in significant numbers in the national economy Plaintiff can perform given the RFC. *See Watson v. Astrue*, 2010 WL 4269545, at *5 (C.D. Cal. Oct. 22, 2010) (finding the RFC and hypothetical questions posed to the VE defective when the ALJ did not properly consider two physicians' findings).

**VIII. Whether an award of benefits is warranted.**

Lastly, Plaintiff requests the Court remand this case for an award of benefits. Dkt. 3 p. 2. The Court may remand a case "either for additional evidence and findings or to award benefits." *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1992). Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). However, the Ninth Circuit created a "test for determining when evidence should be credited and an immediate award of benefits directed." *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record

that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen*, 80 F.3d at 1292.

In this case, the Court has determined the ALJ committed harmful error and has directed the ALJ to re-evaluate Plaintiff's testimony, the lay witness evidence from Plaintiff's husband, mother, and mother-in-law, the RFC, and the Step Five findings on remand. Because outstanding issues remain regarding what weight, if any, to give Plaintiff's testimony and the lay witness evidence; and determination of the RFC and Plaintiff's ability to perform jobs existing in significant numbers in the national economy, remand for further consideration of this matter is appropriate.

## CONCLUSION

Based on the foregoing reasons, the Court hereby finds the ALJ improperly concluded Plaintiff was not disabled. Accordingly, Defendant's decision to deny benefits is reversed and this matter is remanded for further administrative proceedings in accordance with the findings contained herein.

Dated this 6th day of February, 2019.

David W. Christel
United States Magistrate Judge